**Ramon REYES, Appellant,**

v.

**STORAGE & PROCESSORS, INC. and Leonel Guerrero, Appellees.**

No. 06–01–00097–CV.

Court of Appeals of Texas, Texarkana.

Submitted May 29, 2002.

Decided Sept. 13, 2002.

Jerry Pusch, Pusch, Lowery & Gil-crease, Walter Carl Dudensing, Jr., Bob Wicoff, Houston, for appellant.

Robert H. Singleton, Jr., Randall L. Brim, Singleton, Cooksey, Hanson & Lamberth, LLP, Houston, for appellees.

Before GRANT, ROSS and CORNELIUS *, JJ.

## OPINION

Opinion by Justice WILLIAM J. CORNELIUS (Retired).

Storage & Processors, Inc.'s and Leonel Guerrero's Motion for Rehearing is overruled. Our opinion of June 27, 2002, is withdrawn and the following opinion is substituted therefor.

Ramon Reyes brought suit against Storage & Processors, Inc. ("S & P") and a coworker, Leonel Guerrero, alleging they negligently caused him to suffer a workplace injury. On appeal, Reyes challenges the propriety of a summary judgment the trial court granted in favor of S & P and Guerrero. For reasons that follow, we reverse the judgment and remand the case for trial.

Reyes worked as a forklift operator for S & P. The company was a nonsubscriber under the Texas Workers' Compensation Act, but it provided an optional Accident Employee Welfare Benefit Plan ("the Ben-

* William J. Cornelius, Chief Justice, Retired, Sitting by Assignment

efit Plan") for its employees. When Reyes began his employment with S & P, he signed a document, written in Spanish, stating that he had read and understood the rules and stipulations of the benefit plan, and four days later, he signed the benefit plan agreement itself. The agreement provided that in the event an employee suffered a work-related illness or injury, that employee would waive any potential common law claims against S & P or any of its employees or agents, and would have for his sole remedy only the specified benefits provided by the benefit plan. In the course of his employment, Reyes was severely injured when Leonel Guerrero, a coworker, severed Reyes' foot by driving over it with a forklift. Reyes subsequently sued S & P and Guerrero to recover damages caused by their negligence. S & P and Guerrero separately moved for summary judgment, each contending that Reyes had waived his common-law claims pursuant to the benefit plan, had ratified that waiver by accepting and retaining benefits under S & P's benefit plan, and was estopped from contending otherwise by his acceptance of such benefits. The trial court granted summary judgment against Reyes, and Reyes appealed to the Fourth District Court of Appeals.

The appeals court found that the benefit plan agreement between Reyes and S & P was contrary to public policy and void because it essentially enabled S & P to enjoy the advantage of subscriber status, i.e., limited liability, without providing at least subscriber-level benefits in return, thus effectively thwarting the intent of the Legislature as expressed in the workers' compensation statutory system. *See Reyes v. Storage & Processors, Inc.,* 995 S.W.2d 722, 725–26 (Tex.App.-San Antonio 1999, pet. denied). However, in *Lawrence v. CDB Servs., Inc.,* 44 S.W.3d 544, 551–53 (Tex.2001), the Supreme Court disap-

proved the public policy analysis employed by the Fourth Court of Appeals, finding fault with its substantive plan-by-plan comparison of respective benefits. The Texas Supreme Court ruled that agreements like S & P's benefit plan are enforceable, absent any claim of fraud, duress, accident, mistake, or failure or inadequacy of consideration. *See id.* at 553. After the decision in *Lawrence,* S & P and Guerrero collectively filed another motion for summary judgment on the same bases as their original summary judgment motions, i.e., waiver, ratification, and estoppel. The trial court granted the motion, which action Reyes now challenges.

We review a summary judgment de novo. *See Sasser v. Dantex Oil & Gas, Inc.,* 906 S.W.2d 599 (Tex.App.-San Antonio 1995, writ denied). A summary judgment is proper only when the movant establishes there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *See* Tex.R. Civ. P. 166a. To obtain a traditional summary judgment, a defendant must either conclusively negate at least one element of the plaintiff's theories of recovery, *Walker v. Harris,* 924 S.W.2d 375, 377 (Tex.1996), or plead and conclusively prove each element of an affirmative defense. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex. 1979). If the defendant produces evidence entitling it to summary judgment, the burden shifts to the plaintiff to present evidence creating a material fact issue. *Walker v. Harris,* 924 S.W.2d at 377. We take all evidence favorable to the nonmovant as true and indulge every reasonable inference in the nonmovant's favor. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). Where the trial court does not specify the grounds on which it granted summary judgment on each of the causes of

action, summary judgment will be affirmed if any of the theories advanced in the motion is meritorious. *Lang v. City of Nacogdoches,* 942 S.W.2d 752, 757 (Tex.App.-Tyler 1997, writ denied).

Reyes challenges the summary judgment here on the grounds that he raised material issues of fact as to whether he freely and voluntarily signed the liability release or was instead induced to sign it by fraud, misrepresentation, or concealment of its terms; and whether the liability release satisfied the fair notice requirements of conspicuousness and the express negligence doctrine.

■ We agree with S & P and Guerrero that we may not consider Reyes' first point pertaining to whether he was induced to sign the release through fraud, misrepresentation, or concealment of its terms. Reyes did not raise this issue in his response to the motions for summary judgment and therefore may not raise it on appeal. TEX.R. CIV. P. 166a(c). We disagree with S & P and Guerrero, however, regarding the existence of a *Malooly* problem pertaining to their ratification and estoppel bases for summary judgment. Under *Malooly Brothers, Inc. v. Napier,* when as here, the trial court renders a general summary judgment, the nonmoving party on appeal must raise a general point of error stating generally that the trial court erred in granting the summary judgment, or the nonmoving party must negate each specific ground raised in the motion and on which the trial court could have granted summary judgment. *Malooly Brothers, Inc. v. Napier,* 461 S.W.2d 119, 121 (Tex.1970). Reyes devotes the first ten pages of his appellate brief to specifically challenging summary judgment on the basis that he could not have waived liability because the document was written in English, which he cannot read, and he therefore did not have the requisite knowl-

edge to make the waiver free and voluntary. As will be discussed later, knowledge is a necessary element of both S & P's and Guerrero's ratification and estoppel bases. The statement of an issue or point in an appellate brief will be treated as covering every subsidiary question that is fairly included. TEX.R.APP. P. 38.1(e). As we are required to construe briefs liberally, *see* TEX.R.APP. P. 38.9, we construe the argument in the body of Reyes' brief as a challenge to both ratification and estoppel, and conclude that Reyes has adequately assigned error on both these points.

■ S & P and Guerrero argue that summary judgment was proper on the ratification and estoppel issues because those issues were adjudicated as the law of the case in the first appeal of this case. *See Reyes v. Storage and Processors, Inc.,* 995 S.W.2d 722. We disagree. The appellate court in the first appeal found there were fact issues on ratification and estoppel, but that they were immaterial because Reyes, having signed the waiver agreement, was presumed to have had knowledge of its terms. The appeals court there did not consider the requirements of knowledge in a case of claimed ratification of an agreement required to have, but not having, complied with the express negligence and conspicuousness requirements of Texas law, which are applicable to agreements that seek to relieve a party from liability for its own negligence.

■ We turn now to whether the release from liability signed by Reyes must satisfy the fair notice requirements of conspicuousness and the express negligence doctrine in order to be an effective waiver. The fair notice requirements of conspicuousness and the express negligence doctrine are two facial requirements of any contractual release or indemnity agreement that has the effect of relieving a

party, in advance, of liability for its own negligence. *See Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 507–09 (Tex.1993). Under the express negligence doctrine, a party who wishes to contractually shift risk from itself for the consequences of its future negligence must specifically express that intent within the four corners of an agreement. *See Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 707–08 (Tex.1987); *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d at 508. The fair notice requirement of conspicuousness requires that the release or indemnity be written in such a manner that a reasonable person against whom it is to operate should have seen it. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d at 510–11. For example, language in capital headings, language in contrasting type or color, and language in an extremely short document such as a telegram, is considered conspicuous. *Id.* The question of compliance with both the express negligence and the conspicuousness doctrines is a question of law for the court. *Id.* at 510.

S & P and Guerrero contend that the benefit plan agreement at issue in this case does not release them, in advance, of liability for their own negligence, and thus the fair notice requirements of conspicuousness and the express negligence doctrine do not apply. For support, they rely on *In re H.E. Butt Grocery Co.*, 17 S.W.3d 360 (Tex.App.-Houston [14th Dist.] 2000, orig. proceeding.) (cited herein as "HEB"). In HEB, plaintiff Swinton signed an agreement when he was hired that waived his right to sue HEB, his employer, for negligence in return for specified benefits for future workplace injuries. Swinton was hurt while working and he sued. Responding to Swinton's express negligence argument, the court stated that the doctrine did not apply because the benefit agreement that he exe-

cuted with HEB did not attempt to relieve HEB of the consequences of its negligence. *Id.* at 378. "To the contrary," the court stated, "Swinton's 'waiver' and 'release' obligated HEB to pay plan benefits, regardless of its negligence." *Id.* The HEB court's rationale seems to be that because HEB had agreed under the terms of its benefit plan to pay certain limited benefits for workplace injuries it negligently caused (as well as for those injuries it did not cause), HEB was not seeking to relieve itself of potential liability in advance. Similarly, S & P and Guerrero here respond that, because S & P was not relieved of *all liability;* that is to say, because S & P was obligated to pay at least limited plan benefits, the benefit plan is not one that releases them in advance of liability for their own negligence. We disagree.

We first note that *HEB* was decided before *Lawrence v. CDB Servs., Inc.*, 44 S.W.3d 544, in which the Texas Supreme Court expressly stated that the employee's pre-injury release of negligence claims against his employer there at issue, which was of the same effect as the releases in our case and *HEB,* could be enforced only if it satisfied both the express negligence and conspicuousness requirements. *See id.* at 553–54.

Moreover, the rationale of S & P and Guerrero and the *HEB* court rests on an irrelevant distinction between those plans that release an employer of *all liability* and those plans that only release an employer of any liability *in excess of plan benefits.* As stated previously, the fair notice requirements of conspicuousness and the express negligence doctrine apply to any contractual release or indemnity agreement that has the effect of relieving a party, in advance, of liability for its own negligence. *See Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d at 507–

09. Thus, in order to determine whether our release in fact relieved S & P and Guerrero of liability for their own negligence, we need only consider the extent of their potential liability before and after Reyes signed the release. Before Reyes signed the release, when he possessed all his common-law rights against S & P and Guerrero, S & P and Guerrero were subject to the full extent of any liability their negligence might cause. After S & P obtained Reyes' apparent consent to the benefit plan designed to waive his common-law rights, S & P's and Guerrero's liability for their own potential negligence was reduced from a theoretically limitless amount to the minimum amount necessary to meet the specific limited benefits outlined in the benefit plan. As a coemployee, Guerrero's liability for his own future negligence after the waiver was to be basically zero, because he was not obligated to pay anything at all.

Whether an employer's common-law liability for negligence will be nothing, or less than the benefit plan covers, or more than the plan covers, obviously cannot be known before the negligent act and the resulting injury or death. Nevertheless, at least where such common-law liability is greater than the benefits under the benefit plan, there can be no doubt that the effect of the worker's release is to relieve that employer of at least a part of its future liability for its own negligence. The fact that the employer has an alternative compensation scheme in place, as the benefit plan is characterized by S & P and Guerrero, does not mean that an employer is not potentially relieved of some liability. We can see no reason why employers should not be required to comply with the fair notice requirements of conspicuousness and the express negligence doctrine before employees are deemed to have waived even some of their common-law rights. Because the benefit plan at issue in this case is a contractual attempt to relieve parties in advance of at least some liability for their own negligence, we hold that it is subject to the fair notice requirements of conspicuousness and the express negligence doctrine.

■ We need not consider whether the benefit plan does in fact satisfy the fair notice requirements of conspicuousness and the express negligence doctrine, because S & P and Guerrero concede that if the fair notice requirements of conspicuousness and the express negligence doctrine apply, the benefit plan agreement does not comply with the conspicuousness requirement. A liability release or indemnity agreement that is deficient as to the fair notice requirements is unenforceable as a matter of law unless the employee has actual knowledge. *See Douglas Cablevision IV, L.P. v. Southwestern Elec. Power Co.*, 992 S.W.2d 503, 510 (Tex.App.-Texarkana 1999, pet. denied); *U.S. Rentals, Inc. v. Mundy Serv. Corp.*, 901 S.W.2d 789 (Tex.App.-Houston [14th Dist.] 1995, writ denied). Thus, the benefit plan agreement at issue here is unenforceable as a matter of law unless S & P and Guerrero can prove that Reyes had actual knowledge. *See Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d at 508 n. 2 (citing *Cate v. Dover Corp.*, 790 S.W.2d 559, 561 (Tex.1990)).[1] Actual knowledge is an affirmative defense that the indemnitee has the

---

**1.** Although the *Cate* court only expressly addressed the actual knowledge of the party against whom the provision is to be enforced and the conspicuousness of the provision in question, *see Cate v. Dover Corp.*, 790 S.W.2d 559, 560 (Tex.1990), the *Dresser* court appears to have broadened the "actual knowledge" exception to cover both the express-negligence and conspicuousness requirements. *See Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex.1993).

burden to prove. *Dresser Indus., Inc. v. Page Petroleum, Inc.,* 853 S.W.2d 505; *Douglas Cablevision v. Southwestern Elec. Power Co.,* 992 S.W.2d 503; *U.S. Rentals, Inc. v. Mundy Serv. Corp.,* 901 S.W.2d 789. As summary judgment evidence, S & P produced an affidavit from Ruby Perez, the person responsible for conducting safety meetings and orientations for S & P employees. In her affidavit, Perez states she is fluent in English and Spanish; she reviewed the terms of the Benefit Plan with Reyes and other employees, including a "Rights and Responsibilities" page, which explained that employees were waiving any common-law claims by agreeing to participate in the benefit plan; and that Reyes signed a form written in Spanish stating that he had read and understood the rules and stipulations of the plan and would comply with them. This is some evidence that Reyes had actual knowledge that by enrolling in the benefit plan, he was waiving his common-law rights. In response, Reyes produced his own affidavit stating he can neither read nor write English and no one ever explained the benefit plan to him in English or Spanish. He further said he was never given any paperwork written in Spanish and at no time was he aware that he enrolled in a plan whereby he gave up any claims against his employer. This conflicting summary judgment evidence creates a fact issue regarding actual knowledge by Reyes that he was giving up his common-law rights by signing the document. Summary judgment was therefore improper on this basis.

 We must now consider whether it is possible to ratify such a defective agreement, and if so, whether Reyes did ratify it, because ratification was an independent basis for summary judgment on which S & P and Guerrero moved. Ratification is the adoption or confirmation, by one with knowledge of all material facts, of a prior act that did not then legally bind that person and which that person had the right to repudiate. *Vessels v. Anschutz Corp.,* 823 S.W.2d 762, 764 (Tex.App.-Texarkana 1992, writ denied). Because ratification is an affirmative defense, it is the defendant's burden to offer proof on each element of the defense. *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex. 1984). As we are dealing with a summary judgment motion, S & P and Guerrero had the burden to plead and conclusively prove each element of that defense. *See City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d at 678.

 Regarding whether it is possible to ratify a liability waiver that relieves a party, in advance, of liability for its own negligence and that is defective for failing to meet the fair notice requirements, we conclude that such a defective liability waiver may be ratified where it is done with full knowledge of all pertinent facts. The purpose behind fair notice requirements, as the name implies, is to ensure that the executing party has fair notice of what he is executing. Thus, as stated previously, the fair notice requirements do not apply where the signatory's actual notice or knowledge of the indemnity or release is shown. *See Dresser Indus., Inc. v. Page Petroleum, Inc.,* 853 S.W.2d at 508 n. 2 (citing *Cate v. Dover Corp.,* 790 S.W.2d at 561). Therefore, an employee who has executed a liability waiver that is defective for failing to meet the fair notice requirements is in the same position as if he had never signed the release, unless he had actual knowledge of the release's provisions. Ratification in these circumstances can satisfy the purpose behind the fair notice requirements only if the notice which we require be given an employee at the waiver stage be shown to exist at the ratification stage in the form of full knowledge of all of the pertinent facts.

Our decision here is guided by *Leonard v. Hare*, 161 Tex. 28, 336 S.W.2d 619 (1960). In *Leonard*, the employer carried a voluntary compensation policy for those employees who were not covered by workers' compensation. While in the hospital, about a month after the injury, the employee signed an acceptance of the compensation benefits and a release of his employer from common-law liability. The insurance company adjuster testified that he fully explained to the employee the terms of the policy and the nature of his rights under the law. The employee testified that he was not mentally capable of understanding the consequences of his act; that he did not receive a copy of the instrument and had never seen it since; that while the company did pay his hospital bills and he accepted and cashed weekly compensation checks for fourteen months, he immediately ceased cashing the checks, and returned those that had been delivered to him, when his lawyer advised him of his right to sue his employer for damages at common law. *See id.* at 620. The employer contended that the employee was bound by the release of his common-law action and election to accept voluntary compensation benefits when he signed and ratified by writing for such payments and by accepting, endorsing, and cashing weekly compensation payments, each of which showed on its face to have been tendered in payment of such voluntary compensation benefits. *See id.* The Texas Supreme Court found that the actions of the employee in accepting payments did not constitute ratification as a matter of law because the actions did not establish "that at the time of accepting this compensation [the employee] was in possession of and acquainted with all of the facts or that as a matter of law he knew his rights and privileges to accept or reject the benefits under the voluntary compensation policy or to sue his employer at common law or to release him from liability." *Id.* at 621. Without knowledge of those facts pertaining to his rights, ratification did not occur.

Reyes is in exactly the same position as was the plaintiff in *Leonard*. Because of the fact issue as to the validity of the waiver, summary judgment that he lost his common-law rights in their entirety at the time he accepted and retained payment for medical expenses and disability payments was improper. S & P's and Guerrero's summary judgment proof of ratification is that Reyes accepted and retained payment for medical expenses and disability payments after having previously signed the liability waiver. This evidence is insufficient to satisfy the summary judgment burden of proof on knowledgeable ratification. S & P and Guerrero have failed to show any evidence that at the time Reyes accepted plan benefits, he did so with the knowledge he had common-law rights that he would waive by accepting such benefits. We cannot infer that Reyes had knowledge of the indemnity from his having signed the release on his initial employment, because to do so would render the fair notice requirements meaningless. The argument against estoppel fails for the same lack of knowledge on Reyes' part. *See Rourke v. Garza*, 530 S.W.2d 794, 803 (Tex.1975) ("It is essential to the application of the doctrine of estoppel that the person claimed to be estopped have had knowledge of all material facts at the time of the conduct alleged to constitute the basis of the estoppel.").

■ S & P and Guerrero contend that we should follow the general rule to which we referred in *Amouri v. Southwest Toyota, Inc.*, 20 S.W.3d 165 (Tex.App.-Texarkana 2000, pet. denied), and hold that Reyes was presumed to know and agree to the terms of the waiver agreement he signed. *Amouri* does not govern this case.

It was a breach of contract case where the defendant defended on a claim that he was fraudulently induced to execute the contract. Summary judgment evidence showed that an automobile dealer misrepresented a transaction to Amouri. In our opinion, we stated the general rule that parties are bound by the contracts they sign, but we held that rule inapplicable to the facts in that case. Likewise, that general rule is inapplicable to a situation like we have here, where an indemnitee is attempting to enforce an indemnification against its own negligence. If the indemnity agreement fails to comply with the express negligence rule and the conspicuousness rule, the indemnity provision may not be enforced against the indemnitor unless he is shown to have actual knowledge of the indemnity provision. *Dresser Industries, Inc. v. Page Petroleum, Inc.*, 853 S.W.2d at 508 n. 2; *Douglas Cablevision v. Southwestern Elec. Power Co.*, 992 S.W.2d at 510; *U.S. Rentals v. Mundy Serv. Corp.*, 901 S.W.2d at 793. That is the reason for the existence of the express negligence rule and the conspicuousness rule—to bring home to the indemnitor the actual knowledge that an indemnity against the indemnitee's own negligence is being imposed. To charge an indemnitor with knowledge of such an indemnity agreement merely because the indemnity provision is contained within an ordinary written agreement would defeat the purpose of the express negligence and conspicuousness rules. This requirement of actual knowledge is well settled in this kind of case and differs from the general rule relating to other kinds of contracts. Having shown that the liability release at issue here was unenforceable as a matter of law, and that S & P and Guerrero have failed to satisfy their burden of proof for summary judgment on their claims of ratification and estoppel, we conclude that the trial court erred in granting summary judgment. We reverse the judgment and remand this cause for further proceedings consistent with this opinion.